# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JAMES W. HARPEL,

                Plaintiff,

    vs.

RONALD A. NICHOLSON,

                Defendant.

Civil Action No. 12cv10280 (RWZ)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................. 1

RELEVANT FACTS ............................................................................................................ 3

    A.    Jurisdiction and Venue ....................................................................... 3

    B.    The Assignment ................................................................................. 4

    C.    Plaintiff's Claim to the Additional Purchase Price .................................. 5

    D.    Plaintiff's Claims Related to Nicholson's Purported  Construction of the
        Assignment ....................................................................................... 6

ARGUMENT ..................................................................................................................... 7

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER NICHOLSON ................ 7

    A.    Plaintiff Cannot Establish General Jurisdiction over Nicholson ............................ 7

    B.    Plaintiff Cannot Establish Specific Jurisdiction over Nicholson ............................ 8

II.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE
    SOUTHERN DISTRICT OF NEW YORK ........................................................ 9

III.    PLAINTIFF'S CONTRACT CLAIMS FAIL BECAUSE PLAINTIFF HAS NOT
    ALLEGED A BREACH OF THE ASSIGNMENT ........................................... 12

IV.    NICHOLSON DOES NOT OWE PLAINTIFF ANY FIDUCIARY DUTIES
    REALTING TO THE ASSIGNMENT .......................................................... 13

V.    PLAINTIFF'S TORT CLAIMS ARE BASELESS AND NOTHING MORE
    THAN RECAST CONTRACT CLAIMS ...................................................... 14

CONCLUSION ................................................................................................................. 17

1381589_5

## TABLE OF AUTHORITIES

Page(s)

CASES

*AllGood Entertainment, Inc. v. Dileo Entertainment and Touring, Inc.*,
726 F.Supp.2d 307 (S.D.N.Y. 2010) .......................................................11

*Anderson v. Fox Hill Vill. Homeowners Corp.*,
424 Mass. 365, 676 N.E.2d 821 (1997) ..................................................15

*BCCTC Associates, Inc. v. Summerdale/AAHFI, L.P.*,
656 F. Supp. 2d 208 (D. Mass. 2009) .......................................................8

*Biometics, LLC v. New Womyn, Inc.*,
112 F. Supp. 2d 869 (E.D. Mo. 2000) .....................................................10

*Black & Decker Corp. v. Amirra, Inc.*,
909 F.Supp. 633 (W.D.Ark.1995)............................................................10

*Boit v. Gar-Tec Prods., Inc.*,
967 F.2d 671 (1st Cir. 1992) ....................................................................7

*BSB Bank and Trust Co. v. Morrison*,
2003 WL 1797845 (N.D.Y.D. Apr. 4, 2003).............................................10

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..................................................................................7

*Davis v. Dawson, Inc.*,
15 F. Supp. 2d 64 (D. Mass. 1998) ........................................................12

*Gdovin v. Catawba Rental Co., Inc.*,
596 F. Supp. 1325 (N.D. Ohio 1984).......................................................11

*Goodyear Dunlop Tires Operations v. Brown*,
131 S. Ct. 2846 (2011)...............................................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 ..............................................................................................7

*Houk v. Kimberly-Clark Corp.*,
613 F. Supp. 923 (W.D. Mo. 1985) .........................................................11

*Int'l Shoe, Co. v. Washington*,
326 U.S. 310 (1945)....................................................................................7

*Interface Group-Massachusetts, LLC v. Rosen*,
256 F. Supp. 2d 103 (D. Mass. 2003) .......................................................9

*Latesco, L.P. v. Wayport, Inc.,*
   2009 WL 2246793 (Del. Ch. July 24, 2009)....................................................................13, 14

*Mason v. Smithkline Beecham Clinical Laboratories,*
   146 F. Supp. 2d 1355 (S.D. Fla. 2001) .................................................................................11

*Moore v. McKibbon Bros., Inc.,*
   41 F. Supp. 2d 1350 (N.D. Ga. 1998) ...................................................................................10

*Negrón-Torres v. Verizon Communications, Inc.,*
   478 F.3d 19 (1st Cir. 2007)......................................................................................................7

*Phillips v. Prairie Eye Center,*
   530 F.3d 22 (1st Cir. 2008)...................................................................................................7, 8

*Platten v. HG Bermuda Exempted Ltd.,*
   437 F.3d 118 (1st Cir. 2006)....................................................................................................7

*Princess House, Inc. v. Lindsey,*
   136 F.R.D. 16 (D. Mass. 1991)..............................................................................................10

*Regency Housing and Drilling Limited Partnership v. Cohen,*
   1991 Del. Super. LEXIS 341 (Del. Super. Ct. Sept. 11, 1991) ...............................................9

*Roy v. Roy,*
   715 N.E.2d 70, 47 Mass.App.Ct. 921(1999) ..........................................................................8

*Sawtelle v. Farrell,*
   70 F.3d 1381 (1st Cir. 1995)....................................................................................................9

*Senior Settlements, LLC v. Growth Trust Fund,*
   CIV. 05-777 (JBS), 2005 WL 2789380 (D.N.J. Oct. 26, 2005) ............................................10

*Sforza v. Health Ins. Plan of Greater New York, Inc.,*
   210 A.D.2d 214, 619 N.Y.S.2d 734 (1994) ...........................................................................15

*Shaffer v. Heitner,*
   433 U.S. 186, 97 S. Ct. 2569, 53 L.Ed.2d 683 (1977).............................................................9

*Sorenson v. H & R Block, Inc.,*
   2002 WL 31194868 (D. Mass. Aug. 27, 2002) *aff'd*, 107 F. App'x 227 (1st Cir. 2004).........13

*Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.,*
   15 F.3d 327 (4th Cir. 1994) ...................................................................................................16

*Toomer v. Garrett,*
   155 N.C. App. 462, 574 S.E.2d 76 (2002) .............................................................................12

*Tranor v. Brown,*
   913 F.Supp. 388 (E.D.Pa.1996) ...........................................................................10

*U.S. ex rel. Bettis v. Odebrecht Contractors of California, Inc.,*
   297 F. Supp. 2d 272 (D.D.C. 2004) *aff'd sub nom. U.S. ex rel. Bettis v. Odebrecht*
   *Contractors of Cal., Inc.,* 393 F.3d 1321 (D.C. Cir. 2005) ....................................16

*Van Brode Group, Inc. v. Bowditch & Dewey,*
   36 Mass. App. Ct. 509, 633 N.E.2d 424 (1994) ....................................................14

*Verosol B.V. v. Hunter Douglas, Inc.,*
   806 F.Supp. 582 (E.D.Va.1992) ...........................................................................10

*World Energy Alternatives, LLC v. Settlemyre Indus., Inc.,*
   671 F. Supp. 2d 215 (D. Mass. 2009) ...................................................................10

## STATUTES AND RULES

28 U.S.C. § 1404 .............................................................................................................1

28 U.S.C. §1404(a) .........................................................................................................9

Federal Rule of Civil Procedure 12(b)(2) ......................................................................1

Local Rule 7.1(A)(2) .......................................................................................................6

Local Rule 7.1(b) .............................................................................................................1

1381589_5

Defendant Ronald A. Nicholson ("Nicholson"), by and through his undersigned counsel, in support of his motion to dismiss the complaint (hereinafter "Complaint") of plaintiff James H. Harpel ("Harpel" or "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(2) and/or 12(b)(6), or in the alternative, for change of venue pursuant to 28 U.S.C. § 1404, and in accordance with Local Rule 7.1(b), sets forth the following memorandum of reasons and points of authority:

## PRELIMINARY STATEMENT

The present action involves a purported breach of contract relating to the assignment of a limited partnership interest.  Because (i) the claims are asserted by a Florida plaintiff against a New York defendant, and (ii) the contract at issue and its purported breach are not related to defendant Nicholson's minimal Massachusetts contacts, the action should be dismissed for a lack of personal jurisdiction.  Alternatively, at a minimum, as neither party resides in the district, for the convenience of the parties and in the interest of justice, this action should be transferred to the Southern District of New York.

As for the substantive allegations, were the Court to retain jurisdiction over this action, Plaintiff fails to state any viable claim.  Plaintiff Harpel was made an offer for his limited partnership interest in Litchfield Terrace Associates ("Litchfield") by The Investor Services Group ("ISG").  Defendant Nicholson, as general partner of Litchfield at the time, exercised his right of first refusal in accordance with the Litchfield partnership agreement and purchased Harpel's limited partnership interest by matching the terms of the offer from ISG.  The offer entitled Harpel to receive additional compensation in the event the "Purchaser" ultimately "causes" the sale of the partnership's assets.

Notably, how the Purchaser could "cause" the sale is a defined term in the agreement: "The Purchaser shall be deemed to 'cause' the Partnership to dispose of substantially all of its assets . . . if, as of the time of such disposition, <u>the Purchaser or its Affiliate is then serving as general partner of the Partnership.</u>" (emphasis added.)   The Complaint concedes that Nicholson himself was no longer the general partner when Litchfield did eventually sell all its assets. Further, and facially fatal to Plaintiff's claims, the Complaint does not – and cannot –  allege that the general partner at the time of sale was in fact an "Affiliate" of Nicholson.   An "Affiliate" under the agreement is a person under Nicholson's control.   One searches in vain to find any allegation in the Complaint indicating that the general partner of Litchfield at the time of the asset sale was controlled by Nicholson.

What Plaintiff alleges instead, is that another entity purportedly affiliated with Nicholson, but not in the position of general partner, was responsible for and coordinated the sale.   Whether or not that was the case, it does not entitle Plaintiff to the "Additional Purchase Price" under the plain language of the parties' agreement.   Accordingly, Plaintiff's contract based claims fail as a matter of law.

In addition to its flawed contract claims, Plaintiff asserts a series of specious tort claims based on what it alleges to be Nicholson's purportedly improper reading of the assignment agreement.   In a pre-filing telephone conference between counsel for the parties concerning the facts and numerous potential defenses, defendant's counsel noted that the Nicholson-Harpel assignment agreement continues to define ISG as the Purchaser and thus could be read to entitle Plaintiff to the "Additional Purchase Price" *only if ISG* caused the sale of Litchfield's assets. The majority of Harpel's complaint is devoted to arguing that Nicholson has engaged in wrongdoing by identifying this ambiguity in the contract.

However, the resulting claims for breach of fiduciary duty, fraud and negligent misrepresentation fail both as a matter of law and fact.  <u>First</u>, specifically with respect to the fiduciary duty claim, in the context of exercising a right of first refusal, Harpel and Nicholson were engaged in an arms-length transaction and were not in a fiduciary relationship.

 <u>Second</u>, the gravamen of all three tort claims is that Nicholson has asserted an interpretation of the agreement at odds with the alleged intent of the parties.  As a matter of law, however, taking a disputed position on the interpretation of a contract may create a breach of contract claim, but it is not a breach of fiduciary duty, it is not fraud and it is not negligence.

<u>Third</u>, Plaintiff's tort claims are all premised on a purported interpretation of the contract conveyed to Plaintiff's counsel by Nicholson's counsel.  However, in the parties' required meet and confer in advance of the instant motion, Nicholson's counsel made clear that Nicholson is not taking the position that the definition of ISG as Purchaser precludes Harpel from claiming the Additional Purchase Price if in fact Nicholson or his Affiliate caused the sale of Litchfield's assets.  Plaintiff nevertheless continues to maintain these specious claims based on a phantom dispute.

## **<u>RELEVANT FACTS</u>**

### **A. Jurisdiction and Venue**

As set forth in the Complaint, Plaintiff resides in Florida and Defendant resides in New York.  Compl. ¶¶ 21-22.  While the Litchfield partnership itself is Massachusetts based, Compl. ¶¶ 23 -26, the present "action *arises out of* Nicholson's refusal to pay Harpel" amounts that are due under the Assignment of Partnership Interest agreement dated June 2006 (the "Assignment").  Compl. ¶ 1 (emphasis added).

There is no allegation that the Assignment was negotiated at all or in part in Massachusetts.  In fact, the Assignment was negotiated by Nicholson in New York, with the

assistance of his counsel, also based in New York. Affidavit of Ronald Nicholson, dated March 16, 2012 ("Nicholson Aff."), ¶ 10.   To the best of his recollection, all of Nicholson's communications with Plaintiff regarding the Assignment occurred while Plaintiff was in Florida. Nicholson Aff. ¶ 11.   Indeed, the Assignment lists Harpel's address in Florida and Nicholson's address in New York.   Compl. Ex. A. The Assignment makes no reference to Massachusetts.   In fact, the Assignment is expressly governed by North Carolina law. Compl. Ex. A.

Defendant Nicholson is 84 years old and in poor health. Nicholson Aff. ¶ 3.   Whether or not this Court can properly exercise jurisdiction over him, it is substantially inconvenient for him to defend this action in Massachusetts.   Although Nicholson does have an interest in several Massachusetts based entities, Nicholson is unable to travel and has not been in Massachusetts for approximately 5 years. Nicholson Aff. ¶¶ 6, 8.   Any documents relevant to these claims are maintained by him in New York. Nicholson Aff. ¶ 12.   The other potentially relevant witness that Nicholson is aware of, other than the Florida based Plaintiff, is the succeeding general partner of Litchfield, Stephen B. Blum of SB/LTA Management LLC, who also resides in New York. Nicholson Aff. ¶ 13.

## B.  The Assignment

Under the Litchfield partnership agreement, in the event a limited partner intended to sell his partnership interest to a third-party, he was first required to offer "in writing to sell such interest to the General Partners at the same price and upon the same terms…" Compl. ¶ 30.   In March 2006, ISG offered to purchase Harpel's interest in Litchfield. Compl. ¶ 31.[1]   Nicholson, as

---

[1] There is a significant question as to whether Harpel's acceptance and presentation to the general partner of ISG's offer was an abuse of the right of first refusal.  ISG's offer contemplates payment by the purchaser of a base amount plus an additional amount if the purchaser "causes" the sale of the partnership's assets.  As recognized in the ISG offer itself, only the general partner of the partnership (or the general partner's Affiliate) could "cause" such sale. As such, the ISG offer was an artifice designed to require the general partner to pay more than the offeror should the general partner (or the general partner's Affiliate) "cause" the sale.  Should this action not be dismissed, Nicholson

-4-

general partner of Litchfield, exercised the right of first refusal and purchased Harpel's interest on the terms offered by ISG. Compl. ¶ 34.  Nicholson paid the purchase price of $374,000 to Harpel. Compl. ¶ 36.  As part of the Assignment, Nicholson was also required to match the "Additional Purchase Price" provision from ISG's offer.

> The "Additional Purchase Price" is defined as follows:
>
> If within fifteen (15) years following Purchaser's purchase of the Partnership interest Purchaser 'causes' the Partnership to dispose of substantially all of its assets ... Purchaser shall pay to Limited Partner, as additional consideration for the Partnership Interest, the amount Limited Partner would have received as Limited Partner's share of the net proceeds of such disposition .. . if Limited Partner had not sold the Partnership Interest to Purchaser less the amount of the Base Purchase Price [$374,000] .... *The Purchaser shall be deemed to 'cause' the Partnership to dispose of substantially all of its assets ... if, as of the time of such disposition ... the Purchaser or its Affiliate is then serving as the general partner of the Partnership.*

Compl. ¶ 37 (emphasis added).

As defined in the Assignment, an "Affiliate" is a person under the "control" of the General Partner, "where 'control' means the possession, directly or indirectly, of the power to direct the management and policies of a person whether through the ownership of voting securities, contract or otherwise." Compl. ¶ 38.

### C. Plaintiff's Claim to the Additional Purchase Price

In 2008, Nicholson resigned as General Partner of Litchfield. Compl. ¶ 40.  In 2010, Litchfield sold substantially all of its assets.  Compl. ¶ 10.  At the time of sale, SB/LTA was the General Partner of Litchfield. Compl. ¶ 40.  According to the Complaint, the amount Harpel would have been entitled to upon the asset sale if the Additional Purchase Price were triggered, is approximately $1.2 million. Compl. ¶ 14.

---

intends to assert defenses to all claims, and counterclaims against Harpel, based upon, *inter alia*, the equitable principle that one with unclean hands shall not benefit from his inequitable actions.

The Complaint does not set forth any facts regarding the relationship between SB/LTA, the General Partner at the time of the asset sale, and Nicholson.  The Complaint does not allege SB/LTA was an Affiliate of Nicholson, does not question SB/LTA's independence, and does not allege that Nicholson controlled SB/LTA in any way.  Instead, the Complaint alleges that Bay Management Corporation ("BMC") caused the sale of Litchfield's assets and that Nicholson controlled BMC. Compl. ¶¶ 42-43. The Complaint does not allege, because it cannot allege, that at anytime BMC was a member of the partnership.

### D. Plaintiff's Claims Related to Nicholson's Purported Construction of the Assignment

The Complaint alleges "Harpel recently learned that Nicholson contends that the obligation to pay the Additional Purchase Price would only be triggered if ISG . . . caused the sale of substantially all of the Partnership's assets." Compl. ¶15.  A construction which Plaintiff acknowledges is based on the fact that the Assignment does in fact define ISG as Purchaser. Compl. ¶ 15.  Plaintiff contends this construction is "wholly without merit," Compl. ¶ 16, and therefore, by endorsing such construction, Nicholson has breached fiduciary duties, and engaged in fraud and negligent misrepresentations. Compl. ¶¶ 19, 63-84.

As noted below, the mere endorsement of a construction of an agreement cannot, as a matter of law, constitute a breach of fiduciary duty, fraud, or negligence.  Further, Nicholson does not take the position that the obligation to pay the Additional Purchase Price would only be triggered if ISG caused the sale of the partnerships assets.  Nicholson, through his counsel, has conveyed this fact to Harpel, as part of the meet and confer process required under Local Rule 7.1(A)(2).  *See* Affidavit of Daniel Gurfein, dated March 19, 2012, ("Gurfein Aff."), ¶ 3.

1381589_5

**ARGUMENT**

**I.     THIS COURT LACKS PERSONAL JURISDICTION OVER NICHOLSON**

In general, analyzing personal jurisdiction over a defendant involves two inquiries: (1) whether the forum's long-arm statute permits service of process and (2) whether the assertion of personal jurisdiction comports with due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985).   Since the Massachusetts long-arm statute extends to the constitutional limits of due process, the sole inquiry is whether exercising personal jurisdiction comports with due process.  *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir. 2006).

Due process requires a defendant to have "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe, Co. v. Washington*, 326 U.S. 310, 316 (1945).  "Minimum contacts" may be shown through contacts sufficient to assert either "general" or "specific" jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 & n.9 (1984). Plaintiff has not alleged facts sufficient to establish either.

Notably, Plaintiff bears the burden of showing that this Court has personal jurisdiction over Nicholson.  *Phillips v. Prairie Eye Center*, 530 F.3d 22, 25 n.1 (1st Cir. 2008).  Plaintiff must make a prima facie showing, which cannot consist of unsupported allegations.  *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 674-75 (1st Cir. 1992).  As discussed below, Plaintiff has failed to prove, let alone allege, sufficient facts to bring Nicholson within the Massachusetts long-arm statute or to demonstrate personal jurisdiction that comports with federal due process.

**A.     Plaintiff Cannot Establish General Jurisdiction over Nicholson**

"It is well-established that the standard for finding general jurisdiction 'is considerably more stringent than that applied to specific jurisdiction questions.'"  *Negrón-Torres v. Verizon*

*Communications, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007).  For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2853 (2011).

Nicholson is domiciled in New York, not Massachusetts.  The mere fact that he was previously the General Partner of a Massachusetts partnership, or has other business interests in Massachusetts, does not create a continuous and systematic presence in the state.  *See  Roy v. Roy*, 47 Mass. App. Ct. 921, 921, 715 N.E.2d 70, 71-72 (1999) (being officer or director of Massachusetts corporation not sufficient to establish general jurisdiction).  Because Nicholson lacks the substantial, continuous, and systematic contacts with Massachusetts, he is not subject to general jurisdiction in this Court.

### B.     Plaintiff Cannot Establish Specific Jurisdiction over Nicholson

To establish "specific jurisdiction," Plaintiff must first show that the claims underlying the litigation "arise out of, or relate to, the defendant's forum state activities." *Phillips*, 530 F.3d at 27.   The Complaint itself, however, acknowledges that the claims "arise[] out of" the Assignment agreement.   Compl. ¶ 1.   The Assignment was neither negotiated, drafted, performed, or allegedly breached in Massachusetts. *See* Nicholson Aff. ¶¶ 10-12.

Further, establishing specific jurisdiction also requires demonstrating the defendant's "purposeful availment of the privilege of conducting activities in the forum state." *Phillips*, 530 F.3d at 27.  Here, the Assignment agreement is in fact at odds with any intent by the parties to purposefully avail themselves of Massachusetts law, as the parties expressly agreed the assignment would be governed by North Carolina law.   *See BCCTC Assocs., Inc. v. Summerdale/AAHFI, L.P.*, 656 F. Supp. 2d 208, 217-18 (D. Mass. 2009) ("the parties' agreement to Georgia law runs against the conclusion that the Defendants purposefully availed themselves of Massachusetts law.")

-8-

While Litchfield is a Massachusetts partnership, this action is not about the nature of the partnership interest conveyed under the Assignment.  For specific jurisdiction, the "action must *directly* arise out of the *specific* contacts between the defendant and the forum."  *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) (emphasis added); *see also Interface Group-Massachusetts, LLC v. Rosen*, 256 F. Supp. 2d 103, 107 (D. Mass. 2003) ("The First Circuit rejects the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's in-forum contacts seems attenuated and indirect.")  Here, the action arises directly from the Assignment agreement, which from its inception to the present, was negotiated, drafted, performed and purportedly breach without any Massachusetts contact.  The mere fact that the Assignment involved the purchase or sale of a security interest in a forum based entity is not itself a sufficient contact to establish jurisdiction. *Cf.  Shaffer v. Heitner*, 433 U.S. 186, 192, 213, 97 S. Ct. 2569, 2573, 2584 (1977) (ownership of stock in a Delaware corporation did not establish personal jurisdiction); *Regency Housing & Drilling Ltd. P'ship v. Cohen,* 1991 Del. Super. LEXIS 341, at *12-13, 1991 WL 190311, at *4-5 (Del. Super. Ct. Sept. 11, 1991) (applying reasoning of *Shaffer* to partnership interest).

## II.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

In the event this Court were to find it had personal jurisdiction over Nicholson, it should nonetheless transfer this action to the Southern District of New York, as it is a substantially more convenient forum in which to litigate this action.  Pursuant to 28 U.S.C. §1404(a), this Court may transfer any civil action to any other district court where the action might have been brought.  Such a change in venue may be done "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. §1404(a).  The decision to transfer an action is within

the Court's discretion, and the moving party bears the burden of showing that a transfer is proper. *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991).

In deciding whether a transfer is warranted, the Court may consider a number of factors, including: 1) the plaintiff's choice of forum, 2) the convenience of the witnesses and location of documents, 3) the law to be applied, 4) the connection between the forum and the issues, 5) the state or public interests at stake and 6) the relative convenience of the parties. *World Energy Alternatives, LLC v. Settlemyre Indus., Inc.*, 671 F. Supp. 2d 215, 218 (D. Mass. 2009). Of these relevant factors, all are either neutral or weigh in favor of transfer to the Southern District of New York.

First, while Plaintiff's choice of forum is usually afforded substantial deference, federal courts afford a plaintiff's choice of forum less weight where it is not the plaintiff's residence. *See, e.g., Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 877 (E.D. Mo. 2000); *Tranor v. Brown*, 913 F. Supp. 388, 391 (E.D. Pa. 1996); *Black & Decker Corp. v. Amirra, Inc.*, 909 F. Supp. 633, 636 (W.D. Ark. 1995); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992). Here, Massachusetts is neither Plaintiff's residence nor Defendant's.

Thus, as neither party resides in Massachusetts, it is a forum convenient to no one. Moreover, in considering the convenience of the parties, the Court may also consider the parties' age. *Senior Settlements, LLC v. Growth Trust Fund*, 2005 WL 2789380, at *2 (D.N.J. Oct. 26, 2005) ("To be sure, courts may consider the age of the parties as a factor in deciding whether to transfer an action…"). Further, the health of a party has frequently been cited as a significant consideration in determining where venue is most appropriate. *See, e.g., BSB Bank & Trust Co. v. Morrison,* 2003 WL 1797845, *2 (N.D.N.Y. Apr. 4, 2003) (poor health of plaintiff justified venue transfer despite valid forum selection clause); *Moore v. McKibbon Bros., Inc.,* 41 F. Supp.

-10-

2d 1350, 1356-57 (N.D. Ga. 1998) (transfer of a slip and fall case against Georgia-based corporation from Georgia to North Carolina appropriate based on poor health of one party where witnesses were located in both jurisdictions; "travel would be required of one party in either forum"); *Mason v. Smithkline Beecham Clinical Labs.,* 146 F. Supp. 2d 1355, 1360 (S.D. Fla. 2001); *Gdovin v. Catawba Rental Co., Inc.,* 596 F. Supp. 1325, 1327 (N.D. Ohio 1984); *Houk v. Kimberly-Clark Corp.,* 613 F. Supp. 923, 930 (W.D. Mo. 1985) (Court noted its "unwillingness to direct an action which might pose a risk, of whatever magnitude, to plaintiff's continued rehabilitation or effectively enforce him to abandon his right to be present at the trial of this lawsuit ..."). Both Nicholson's advanced age and poor health, *see* Nicholson Aff. ¶¶ 4-5, weigh heavily in favor of transfer, particularly here, where Plaintiff, who is even further from Massachusetts than Nicholson, is in no way inconvenienced.

Similarly, the convenience of relevant witnesses and location of documents weighs in favor of transfer. In addition to Nicholson, the succeeding General Partner of Litchfield, Stephen Blum of SB/LTA resides in New York. Nicholson Aff. ¶ 13. Thus, both Mr. Blum's documents and any documents in Nicholson's possession or control are also located in New York, not Massachusetts.

As to the law to be applied, with respect to Plaintiff's contract claims, it will be North Carolina, based on the choice of law provision in the Assignment. If Plaintiff were able to articulate a valid tort claim, New York law would most likely apply as the jurisdiction from which Nicholson's purportedly tortious conduct emanated. *AllGood Entertainment, Inc. v. Dileo Entertainment & Touring, Inc.*, 726 F. Supp. 2d 307, 315 (S.D.N.Y. 2010) ("If the purpose of the competing laws is to regulate conduct, as it is here, the law of the jurisdiction where the tort

occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders").

### III.   PLAINTIFF'S CONTRACT CLAIMS FAIL BECAUSE PLAINTIFF HAS NOT ALLEGED A BREACH OF THE ASSIGNMENT

Plaintiff's causes of action for a Declaratory Judgment (Count I), Breach of Contract (Count II) and Breach of the Covenant of Good Faith and Fair Dealing (Count VI) are all premised on Nicholson's purported failure to pay Harpel the Additional Purchase Price. *See* Compl. ¶¶ 52, 57, 88.   Plaintiff has not, however, alleged any facts entitling Harpel to the Additional Purchase Price.

The Assignment is clear: Harpel is entitled to the Additional Purchase Price if Nicholson or Nicholson's Affiliate was the General Partner at the time of Litchfield's asset sale.   The Complaint acknowledges that Nicholson was no longer the General Partner in 2010 when Litchfield's assets were sold.   The Complaint does not allege that SB/LTA was an Affiliate of Nicholson.

Plaintiff's claims are premised on the allegation that BMC was an Affiliate of Nicholson and purportedly "caused" the sale of Litchfield's assets.   That is not sufficient.   As a matter of law, BMC, an outsider to the partnership, could not cause the partnership to sell its assets. Plainly, a partnership is controlled by the General Partner, and absent allegations that the General Partner at the time of sale was in fact controlled by Nicholson, Nicholson did not cause the sale. Accordingly, Harpel is not entitled to the Additional Purchase Price.

Elementary to a contract claim is asserting an actual breach of the terms of the agreement. *See Toomer v. Garrett*, 155 N.C. App. 462, 481, 574 S.E.2d 76, 91 (2002); *Davis v. Dawson,*

*Inc.*, 15 F. Supp. 2d 64, 128 (D. Mass. 1998). As Plaintiff has not pled a contractual breach entitling him to payment of the Additional Purchase Price, Count I, II and VI must be dismissed.[2]

## IV.   NICHOLSON DOES NOT OWE PLAINTIFF ANY FIDUCIARY DUTIES REALTING TO THE ASSIGNMENT

The Complaint alleges that Nicholson owed and breached fiduciary duties to Harpel in connection with the Assignment. Specifically, according to the Complaint, "Nicholson's fiduciary duties toward Harpel included (i) the obligation to make full disclosure of all information material to the Assignment transaction; (ii) to refrain from self-dealing…, and (iii) to ensure that Harpel received a fair price…" Compl. ¶ 66.

Concededly, in certain circumstances a general partner owes a fiduciary duty to his limited partners in their partnership dealings. However, it is neither logical nor appropriate to apply such a duty in the context of a contractual exercise of a right of first refusal. Notably, the Delaware Court of Chancery recently addressed this very issue, finding that a right of first refusal over a stockholder's shares "is not governed by any generalized fiduciary duty of disclosure . . . Nor is such performance governed by any generalized application of the duty of loyalty. Instead, the contours of such an insider's duty to the selling stockholder is defined by the terms of the agreement itself and the normal prohibitions against fraud." *Latesco, L.P. v. Wayport, Inc.*, 2009 WL 2246793, at * 1 (Del. Ch. July 24, 2009).

As the Delaware Court of Chancery explained, in what it acknowledged was a case of first impression in Delaware or elsewhere, it makes no sense to place fiduciary duties on a party exercising a contractual right of first refusal. Nicholson did not solicit the sale and did not

---

[2] Count VI, asserting a Breach of the Covenant of Good Faith and Fair Dealing, should be dismissed as it is entirely duplicative of Plaintiff's Breach of Contract claim. *Sorenson v. H & R Block, Inc.*, 2002 WL 31194868, at *17 (D. Mass. Aug. 27, 2002), *aff'd*, 107 F. App'x 227 (1st Cir. 2004) (dismissing good faith and fair dealing claim as duplicative because plaintiff's "claim that Block breached the covenant of good faith and fair dealing concerns no conduct on the part of Block or its employees which would not constitute a breach of contract, if proven.").

negotiate the price or terms for the sale of Harpel's partnership interest.  *See Latesco, L.P.*, 2009 WL 2246793, at * 7.    There can be no purported "obligation to make full disclosure," or obligation "to ensure Harpel received a fair price," on the part of Nicholson as he did not establish the terms of the transactions, and did not have the ability to alter them.  *See id.* ("any broad rule of fiduciary disclosure would almost certainly disrupt the intended operation of any right of first refusal … Such rights generally operate on tight time schedules and certainly do not contemplate price renegotiation  . . ."). The price and terms of sale for Harpel's partnership interest was set by ISG, all Nicholson could do and did do, was match that price and terms.

A fiduciary duty arises "when one reposes faith, confidence, and trust in another's judgment and advice."  *Van Brode Group, Inc. v. Bowditch & Dewey*, 36 Mass. App. Ct. 509, 516, 633 N.E.2d 424, 428 (1994).  Here, in asking Nicholson to either match ISG's purchase offer or not, Harpel was in no way reposing faith, confidence and trust in Nicholson. Accordingly, Plaintiff cannot identify a fiduciary relationship with Nicholson relating to the purchase of his partnership interest; therefore – in addition to the reasons set forth below – his breach of fiduciary duty claim fails as a matter of law.

## V.    PLAINTIFF'S TORT CLAIMS ARE BASELESS AND NOTHING MORE THAN RECAST CONTRACT CLAIMS

Plaintiff's causes of action for Breach of Fiduciary Duty (Count III), Fraud and Misrepresentation (Count IV), and Negligent Misrepresentation (Count V) are all based on Nicholson's purported wrongful conduct in allegedly taking the position that Plaintiff is not entitled to the Additional Purchase Price because ISG is defined as the Purchaser under the Assignment, and ISG did not cause the sale of Litchfield's assets.

First, in light of Nicholson's express disavowal of such a position as grounds to deny payment of the Additional Purchase Price, Plaintiff's insistence on continuing to press these claims is frivolous and a waste of both the Court's and parties' time and resources.

Second, even if Nicholson maintained that the ambiguity created by the Assignment's defining ISG as Purchaser precludes Plaintiff from receiving the Additional Purchase Price, it does not create a fiduciary duty, fraud or negligent misrepresentation cause of action.

Plaintiff's fiduciary duty and fraud causes of action assert that Nicholson's entered into the Assignment with the purported "understanding and intention" that he would never have to pay the Additional Purchase Price. Compl. ¶ 67, 74. Plaintiff's negligent misrepresentation cause of action asserts that "Nicholson knew or should have known that the Assignment omitted statements that would otherwise have made the statements made therein not misleading." Compl. ¶ 81. All three causes of action essentially allege that Nicholson entered into the contract without any intention to perform. An intention not to perform a contract may be a breach of contract, but unless, unlike here, Plaintiff can allege extra-contractual obligations or misrepresentations, independent of the contract, Plaintiff's redress lies solely in contract. *See Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 368, 676 N.E.2d 821, 823-24 (1997) ("failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made."); *Sforza v. Health Ins. Plan of Greater New York, Inc.*, 210 A.D.2d 214, 214, 619 N.Y.S.2d 734, 736 (1994) ("The plaintiff alleges … defendants . . . did not intend to carry out their promise, and thus are guilty of fraud. However, it is well settled that where, as here, a claim to recover damages for fraud is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in

fraud does not lie, and the plaintiff is consigned to his breach of contract claim.") (internal citations omitted); *Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 331, 339 (4th Cir. 1994) (where a plaintiff does "nothing more than assert that [a promissor] never intended to honor its obligations under [an] agreement," dismissal of tort claims as a matter of law is appropriate; "Simply put, this case involves an attempt ... to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim.").

Plaintiff ultimately seeks to hold Nicholson liable in tort for purportedly relying on a "construction of the Assignment that is wholly without merit." Compl. ¶ 16.   But even an unreasonable contract interpretation is not a tort. *Cf.   U.S. ex rel. Bettis v. Odebrecht Contractors of California, Inc.*, 297 F. Supp. 2d 272, 291 (D.D.C. 2004), *aff'd sub nom. U.S. ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321 (D.C. Cir. 2005) (rejecting fraud-based claim premised on defendant's "unreasonable contract interpretation," as "[d]isputed legal issues do not constitute fraud").[3]

Thus, even if Nicholson refused to pay the Additional Purchase Price based on a construction of the agreement that is allegedly "wholly without merit" – a position Nicholson is not in fact taking – Plaintiff's remedy is a claim for breach of contract only.

Accordingly, Count III, IV, and V should be dismissed.

---

[3] Plaintiff's fraud claim also fails to comply with Federal Rule of Civil Procedure 9(b), as the allegations lack the particularity required to assert a fraud claim.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Complaint should be dismissed for lack of personal jurisdiction, or for failure to state a claim.   Alternatively, this action should be transferred to the Southern District of New York.

March 20, 2012

                                 Respectfully submitted,
                                 Defendant,
                                 Ronald A. Nicholson,
                                 by his attorneys,

                                 /s/ Daniel G. Gurfein
                                 Daniel G. Gurfein (admitted *pro hac vice*)
                                 James Regan (admitted *pro hac vice*)
                                 SATTERLEE STEPHENS BURKE & BURKE LLP
                                 230 Park Avenue, Suite 1190
                                 New York, NY 10169
                                 Tel: (212) 818-9200

                                 /s/ Matthew J. Walko
                                 Matthew J. Walko (BBO No. 562172)
                                 mjwalko@smithduggan.com
                                 SMITH DUGGAN BUELL & RUFO LLP
                                 Three Center Plaza, Suite 800
                                 Boston, Massachusetts 02108-2011
                                 Tel: 617-228-4400
                                 Fax: 617-248-9320

1381589_5

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and a true paper copy of the above document will be sent to those indicated as non-registered participants by first class mail, postage prepaid, on March 20, 2012.

/s/ Matthew J. Walko
Matthew J. Walko (BBO No. 562172)