UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10280-RWZ

JAMES W. HARPEL

v.

RONALD A. NICHOLSON

MEMORANDUM OF DECISION

October 17, 2012

ZOBEL, D.J.

Plaintiff James W. Harpel ("Harpel") was once a limited partner in a Massachusetts partnership called Litchfield Terrace Associates ("LTA"); defendant Ronald A. Nicholson ("Nicholson") was the general partner. Harpel sold his share of the partnership to Nicholson, and he claims Nicholson owes him about $1.2 million from that sale. Nicholson moves to dismiss for lack of personal jurisdiction and failure to state a claim, and he moves in the alternative for change of venue.

**I.    Background**

LTA was created in 1972 as a Massachusetts limited partnership. Its purpose was to develop and operate the Litchfield Terrace Apartments in Leominster, Massachusetts. Nicholson was the original general partner, and Harpel was one of the original limited partners.

In 2006, Harpel decided to sell his limited partnership interest. He found a buyer

in The Investor Services Group ("ISG") and prepared an agreement under which ISG would purchase his entire stake in LTA. However, the limited partnership certificate governing LTA provided the general partner (Nicholson) with a right of first refusal. That is, it required Harpel to first offer his stake to Nicholson at the same price and on the same terms as he offered ISG. Nicholson exercised his right of first refusal and purchased Harpel's interest in LTA for $374,000 plus the "additional purchase price."

The "additional purchase price" was defined in the contract between Harpel and Nicholson as follows:

> "Additional Purchase Price" means an amount determined as follows. If within fifteen (15) years following Purchaser's purchase of the Partnership Interest, Purchaser "causes" the Partnership to dispose of substantially all of its assets . . . , Purchaser shall pay to Limited Partner, as additional consideration for the Partnership Interest, the amount Limited Partner would have received as Limited Partner's share of the net proceeds of such disposition . . . if Limited Partner had not sold the Partnership Interest to Purchaser less the amount of the Base Purchase Price . . . . The Purchaser shall be deemed to "cause" the Partnership to dispose of substantially all of its assets . . . if as of the time of such disposition . . . the Purchaser or its Affiliate is then serving as a general partner of the Partnership.

Docket # 1, Ex. A. In other words, Nicholson agreed that if he or his "Affiliate" should "cause" LTA to sell substantially all its assets within fifteen years, Nicholson would pay Harpel as if Harpel still held his partnership interest (minus the purchase price already paid). The contract further defined "Affiliate" as "with respect to any particular person, any other person controlling, controlled by or under common control with such particular person, where 'control' means the possession, directly or indirectly, of the power to direct the management and policies of a person." Id.

In 2008, Nicholson resigned as the general partner of LTA, and appointed SB/LTA Management LLC ("SB/LTA") as the new general partner. SB/LTA is a New York entity controlled by someone named Stephen Blum. Harpel alleges, however, that the substitution of SB/LTA as general partner was merely nominal, and that Nicholson continued to direct LTA's actions through a company called Bay Management Corp. ("BMC") that Nicholson controlled. In 2009 or 2010,[1] LTA sold substantially all of its assets for approximately $10 million. Harpel alleges Nicholson (or his affiliates) "caused" that sale, and so claims Nicholson now owes Harpel an "additional purchase price" amount of approximately $1.2 million.

## II.  Personal Jurisdiction

Nicholson moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(2), claiming the court lacks personal jurisdiction over him. The plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant. Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Three methods exist for determining personal jurisdiction: the prima facie method, the preponderance method, and the likelihood method. See Boit v, Gar-Tec Prods., 967 F.2d 671, 674-78 (1st Cir. 1992). In this case, the court will apply the prima facie method, which is the most commonly used; it is appropriate where, as here, the facts regarding jurisdiction are not in dispute. See id. at 675-76. "Under the prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Phillips v. Prairie Eye Ctr., 530

---

[1] The complaint is unclear. Compare Complaint ¶ 10, with id. ¶ 41.

F.3d 22, 26 (1st Cir. 2008). The court accepts as true evidence proffered by the plaintiff, and it also considers uncontested facts put forward by the defendant. Mass Sch. of Law, 142 F.3d at 34.

Personal jurisdiction must be authorized by state statute and must comply with the Due Process Clause of the federal Constitution. Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011). The Massachusetts Supreme Judicial Court has interpreted the state's long-arm statute to grant personal jurisdiction to the full extent permitted by the Due Process Clause; therefore, the court need only consider whether personal jurisdiction here satisfies due process. Id. at 80-81; Phillips, 530 F.3d at 26.

Personal jurisdiction can be either general or specific. For general jurisdiction, due process requires that the defendant have continuous and substantial contacts with the forum state, but the claim need not be related to those contacts.  Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). For specific jurisdiction, the defendant need only have some minimum contacts with the forum state; however, the claim must be related to those contacts. Id. Furthermore, the defendant's contacts must represent a purposeful availment of the privilege of conducting activity in the forum state, and the exercise of jurisdiction must be reasonable under the circumstances. Phillips, 530 F.3d at 27.

Harpel argues that the court has both general and specific jurisdiction over Nicholson. The court finds that Harpel has established specific jurisdiction, and so it need not consider general jurisdiction. As discussed below, Harpel's evidence is sufficient to meet all three components of the specific jurisdiction inquiry: Harpel's claim

is related to Nicholson's Massachusetts contacts, those contacts represented purposeful availment, and the exercise of jurisdiction is reasonable.

**A. Relatedness**

The relatedness test is a "flexible, relaxed standard." Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994). It requires only "a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Mass Sch. of Law, 142 F.3d at 34. In a contract dispute, the court looks to whether "the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach." Adelson, 652 F.3d at 81 (quoting Adams v. Adams, 601 F.3d 1, 6 (1st Cir. 2010)).

Here, Harpel has submitted evidence showing that Nicholson acted in Massachusetts by establishing LTA, a Massachusetts limited partnership that developed and operated a Massachusetts housing project, and by serving as LTA's general partner for over thirty-five years. Those contacts are related to the claims in this case because the contract here was formed when Nicholson exercised his right of first refusal as general partner. Harpel has also submitted evidence showing that Nicholson is the president, treasurer, and director of BMC, a corporation with its principal office in Dedham, Massachusetts. LTA's principal office is listed with the Massachusetts corporate registry as "care of" BMC, at BMC's principal office address. That contact is related to these claims because Harpel alleges that Nicholson acted through BMC to sell LTA's assets and so breach the contract.

Nicholson argues that the only contacts relevant to Harpel's contract claims are where the contract at issue was negotiated and executed and where it was breached.

5

He points out that at the time when the contract was created, and also when it was allegedly breached, he was in New York and Harpel was in Florida. But Nicholson reads the relatedness test too narrowly. The question is not just whether the contract at issue was itself formed or breached in Massachusetts, but more broadly whether Nicholson's Massachusetts contacts were directly related to the contract claims. See Harlow, 432 F. 3d at 61 (comparing the relatedness requirement to a proximate cause standard). Here, Nicholson's Massachusetts activities gave him the right of first refusal that he exercised to form the contract at issue; they were also allegedly key to the contract's breach. On these facts, Harpel's claims are sufficiently related to Nicholson's activities in Massachusetts to permit specific jurisdiction.

### B. Purposeful Availment

Purposeful availment "involves both voluntariness and foreseeability." Phillips, 530 F.3d at 28. Voluntariness requires that the defendant's contacts with the forum "proximately result from actions by the defendant himself," rather than the unilateral activity of another party. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Foreseeability requires that the defendant's contacts with the forum allow him to "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In this case, Nicholson's Massachusetts activities in forming LTA, serving as LTA's general partner, and serving as BMC's corporate head were clearly voluntary. Nicholson likewise could reasonably anticipate facing suit in Massachusetts for his LTA- and BMC-related activities, including the formation and alleged breach of this contract.

**C. Reasonableness**

In determining whether the exercise of jurisdiction is reasonable, the court considers the so-called "gestalt factors." <u>Adelson</u>, 652 F.3d at 83. These factors include (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in the most effective resolution of the controversy; and (5) the shared interest of all states in furthering basic social policies. <u>N. Laminate Sales, Inc. v. Davis</u>, 403 F.3d 14, 26 (1st Cir. 2005). Here, the first factor cuts slightly against jurisdiction, given that Nicholson lives in New York and is eighty-four years old and infirm; the second factor cuts slightly in favor of jurisdiction, given Massachusetts's interest in adjudicating disputes relating to its limited partnerships; the third factor cuts slightly in favor of jurisdiction, as Harpel chose this forum; and the fourth and fifth factors play no role. Overall, exercising jurisdiction over Nicholson is reasonable in this case.

Because the court has specific personal jurisdiction over Nicholson, his motion to dismiss for lack of personal jurisdiction is denied.

**III.    Failure to State a Claim**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must allege sufficient facts to make the plaintiff's claim plausible. <u>Id.</u>

Nicholson argues that none of the six counts in Harpel's complaint state a claim.

7

**A. Counts I, II, and VI**

Nicholson challenges Count I (declaratory judgment), Count II (breach of contract), and Count VI (breach of covenant of good faith and fair dealing) by arguing that the facts as pleaded in the complaint show he did not breach the contract. He focuses on the last sentence of the contract's additional purchase price provision, which states: "The Purchaser shall be deemed to 'cause' the Partnership to dispose of substantially all of its assets . . . if as of the time of such disposition . . . the Purchaser or its Affiliate is then serving as a general partner of the Partnership." Based on this language, Nicholson argues he could not possibly have "caused" LTA to dispose of its assets, because SB/LTA (not Nicholson) was the general partner of LTA when the assets were sold. He further argues that the complaint does not sufficiently allege that SB/LTA was his "Affiliate," defined by the contract as an entity under his control.

Nicholson's argument fails on both levels. First, the contract states that Nicholson will owe Harpel the additional purchase price if he "causes" LTA to sell all its assets. It then provides one situation in which Nicholson "shall be deemed" to have caused the asset sale: if Nicholson (or his affiliate) is LTA's general partner. Nicholson assumes this is the only situation in which he could cause the asset sale. But the contract does not say Nicholson shall <u>only</u> be deemed to "cause" the sale if he (or his affiliate) is LTA's general partner. An equally plausible reading is that Nicholson shall be conclusively presumed to have "caused" the sale if he (or his affiliate) was the general partner, but he could also "cause" the sale in other ways. On the present undeveloped record, the court cannot find that the contract unambiguously favors

Nicholson's interpretation.

Moreover, Harpel has plausibly alleged that SB/LTA was Nicholson's "Affiliate," as that term is used in the contract. Harpel alleges that Nicholson appointed SB/LTA as general partner, that the appointment was purely nominal, and that Nicholson retained control of LTA's assets through his position at BMC. Those allegations support a plausible inference that Nicholson was able to direct SB/LTA's actions, making SB/LTA an "Affiliate" of Nicholson at the relevant time. Although Harpel could certainly have alleged the relationship between Nicholson and SB/LTA more clearly, his pleading satisfies Rule 8(a)(2).[2]

**B. Counts III, IV, and V**

Harpel brings Count III (breach of fiduciary duty), Count IV (fraud and misrepresentation), and Count V (negligent misrepresentation) because Nicholson once contended that "Purchaser" in the contract referred to ISG, the buyer originally interested in Harpel's shares, and not to Nicholson. Nicholson has since dropped that position. Harpel nevertheless claims that Nicholson intended all along to claim that "Purchaser" referred to ISG, and that he committed several torts by failing to disclose that intent.

Harpel has failed, however, to plausibly allege any damages from Nicholson's previous interpretation of the contract. Because Nicholson no longer asserts his alternative reading of "Purchaser," Harpel still has the same contract he thought he

---

[2] Nicholson also argues in a footnote that Count VI, for breach of the covenant of good faith and fair dealing, should be dismissed as entirely duplicative. The court disagrees.

had, and the same contract he would have if Nicholson never intended to claim "Purchaser" meant ISG. Absent some facts showing that Harpel was harmed by Nicholson's now-renounced interpretation, Harpel cannot recover on these counts. The motion to dismiss Counts III, IV, and V is therefore allowed.[3]

**IV.    Venue**

A district court may transfer any civil action to another district "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The burden of proof rests with the party seeking a transfer, and there is a strong presumption in favor of the plaintiff's choice of forum. Astro-Med, Inc. v. Nihon Kohden Am., 591 F.3d 1 (1st Cir. 2009). That presumption may be weaker when the plaintiff's chosen forum is not his home forum. See Adelson v. Hananel, 510 F.3d 43, 53 (1st Cir. 2007). The court may consider a number of additional factors beyond the plaintiff's choice of forum and the convenience of parties and witnesses, including the law to be applied, the connection between the forum and the issues, and the interests of the relevant states and the public. World Energy Alts. v. Settlemyre Indus., 671 F. Supp. 2d 215, 218 (D. Mass. 2009).

Nicholson moves for transfer to the Southern District of New York where he resides. As grounds, he cites his advanced age, medical conditions, and difficulty traveling. He also notes that Stephen Blum, the current manager of SB/LTA, resides in New York and keeps SB/LTA related documents there. He points out that Harpel lives

---

[3] Given this disposition, the court need not address Nicholson's interesting argument that general partners bear no fiduciary duty to limited partners in a right of first refusal context.

in Florida and argues Harpel's choice of venue should therefore have less weight. Finally, he argues that the contract will be governed by North Carolina law under its choice-of-law clause, and that any tort claims will probably be under New York law as the place where Nicholson was when the alleged torts were committed.

Harpel counters that only limited travel would be required of Nicholson, and that the relevant documents are available in Massachusetts or could easily be transported there. He also argues that Massachusetts has an interest in resolving this dispute because it relates to a Massachusetts limited partnership, and that Massachusetts law would govern any tort claims.

Nicholson's arguments are not persuasive enough to overcome the presumption in favor of the plaintiff's choice of forum. Even when the court gives Harpel's choice less deference because Massachusetts is not his home forum, it still outweighs Nicholson's case for transfer. The parties shall, however, do their best to alleviate the burden imposed on Nicholson by a Massachusetts forum and to ensure that this action does not require him to travel more than necessary.

**V.   Conclusion**

For the foregoing reasons, Nicholson's motion to dismiss (Docket # 10) is ALLOWED as to Counts III, IV, and V for failure to state a claim. It is DENIED in all other respects.

|  |  |
|---|---|
|    October 17, 2012    |    /s/Rya W. Zobel    |
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |