# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES W. HARPEL,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JAMES A. NICHOLSON<br><br>　　　and<br><br>JUSTIN M. NICHOLSON,<br><br>As Executors Of The Estate Of Ronald A. Nicholson,<br><br>　　　　　Defendants. | Civil Action No. 12cv10280 (RWZ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.   FACTS RELEVANT TO THE PRESENT DISCOVERY DISPUTE ............................... 1

II.  SUMMARY OF THE ARGUMENT .................................................................................. 4

III. ARGUMENT ........................................................................................................................ 5

  a.  Legal Standard ............................................................................................................ 5

  b.  Eastwood/ISG's Amended Privilege Log is Deficient ............................................... 7

  c.  Eastwood/ISG Cannot Assert the Common-Interest Privilege ................................. 9

IV.  CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's London*,
  2004 Mass. Super. LEXIS 182 (Mass. Sup. Ct. 2004) ...................................................... 8

*Avery Dennison Corp. v. Four Pillars*,
  190 F.R.D. 1 (D. D.C. 1999) ............................................................................................. 6

*Cavallaro v. United States*,
  284 F.3d 236 (1st Cir. 2002) ........................................................................................ 8, 10

*Conlon v. Rosa*,
  295907, 2004 WL 1627337 (Mass. Land Ct. July 21, 2004) .......................................... 10

*Dorf & Stanton Communs. v. Molson Breweries*,
  100 F.3d 919 (Fed. Cir. 1996) .......................................................................................... 7

*Gail v. New Eng. Gas Co.*,
  243 F.R.D. 28 (D. R.I. 2007) ........................................................................................ 6, 8

*In re Grand Jury Subpoena*,
  662 F.3d 65 (1st Cir. 2011) ........................................................................................... 6, 9

*In re Keeper of the Records*,
  348 F.3d 16 (1st Cir. 2003) ............................................................................................... 6

*In re Rock & Republic Enterprises, Inc.*,
  No. 10-11728, 2010 WL 4137572 (Bankr. S.D.N.Y. 2010) ............................................. 7

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*,
  213 F.R.D. 89 (D. Mass. 2002) ......................................................................................... 9

*Leader Techs., Inc. v. Facebook, Inc.*,
  719 F. Supp. 2d 373 (D. Del. 2010) ................................................................................ 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Midland Bancor, Inc.*,
  159 F.R.D. 562 (D. Kan. 1994) ........................................................................................ 7

*United States v. Constr. Prods. Research, Inc.*,
  73 F.3d 464 (2d Cir. 1996) ............................................................................................ 6, 7

*W.E. Aubuchon Co. v. Benefirst, LLC*,
  245 F.R.D. 38 (D. Mass. 2007) ......................................................................................... 5

*Walsh v. Northrop Grumman Corp.*,
  165 F.R.D. 16 (E.D.N.Y 1996) ....................................................................................... 10

1730732_3

*Zubulake v. UBS Warburg,*
　　217 F.R.D. 309 (2003) ...................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(5)(A) ..............................................................................................6

Fed. R. Civ. P. 45(e) .....................................................................................................5, 8

Federal Rules of Civil Procedure 37 and 45 ....................................................................1

Rule 45 of the Federal Rules of Civil Procedure ............................................................5

Local Rule 34.1 ................................................................................................................6

Local Rule 37.1 ................................................................................................................4

Rule 26 .........................................................................................................................5, 6

Rule 26(b) ........................................................................................................................5

Rule 26(b)(1) ...................................................................................................................5

Rule 45 .............................................................................................................................5

Defendants James A. Nicholson and Justin M. Nicholson, as executors' for the Estate of Ronald Nicholson (the "Estate"), by and through undersigned counsel, in support of the Estate's motion pursuant to Federal Rules of Civil Procedure 37 and 45, move to compel compliance with the subpoena duces tecum (the "Subpoena") issued to Eastwood Investors, LLC ("Eastwood") and The Investor Service Group ("ISG") (collectively, "Eastwood/ISG"), and set forth the following memorandum of reasons and points of authority:

I.  **FACTS RELEVANT TO THE PRESENT DISCOVERY DISPUTE**

The present action involves a purported breach of contract related to the assignment of a limited partnership interest. Plaintiff James W. Harpel ("Harpel") was made an offer for his limited partnership interest in Litchfield Terrace Associates ("Litchfield") by ISG, an affiliate of Eastwood. Ronald Nicholson, as general partner of Litchfield at the time, exercised his right of first refusal in accordance with the Litchfield partnership agreement and purchased Harpel's limited partnership interest by matching the terms of the offer from ISG. Compl. ¶¶ 33- 35. The offer entitled Harpel to receive additional compensation in the event the "Purchaser" ultimately "causes" the sale of the partnership's assets. Compl. ¶ 37. Harpel claims that Ronald Nicholson, although no longer the general partner at the time of sale, nevertheless "caused" the sale. Harpel has brought this action to recover what he claims is the approximately $1.2 million in additional compensation due to him as a result of the sale of the partnership's assets.

Following motion practice, Ronald Nicholson filed his Answer and asserted Counterclaims against Harpel. [Docket No. 27]. Ronald Nicholson specifically alleged in the Counterclaims that "ISG is a corporate raider and its central business is to infiltrate partnerships and force their liquidation," and that the ISG offer was "an artifice designed to require the general partner to pay more than ISG for Harpel's interest." Countercl. ¶¶ 2-4. Further, the

1

Counterclaims allege that the ISG offer did not in fact replicate the offer Ronald Nicholson was forced to match because ISG's offer – undisclosed to Ronald Nicholson – included "(i) ISG's obligation to finance the inevitable litigation that would ensure when Harpel attempted to collect the Additional Purchase Price and (ii) Harpel's obligation to kickback to ISG a portion of the base amount and or the Additional Purchase Price when and if obtained. As such, it is ISG who is actually prosecuting this action, and it is doing so with counsel that has regularly represented the individuals that are behind ISG and that specialize in raids on real estate partnerships." Countercl. ¶ 2

Discovery has to date proven the Counterclaim allegations to be spot on. Nicholson served a Subpoena on Eastwood/ISG on January 15, 2013. *See* Declaration of James Regan ("Regan Decl."), Ex. A. Among the documents produced was an October 10, 2011 Agreement for Advisory Services between Harpel and Eastwood (the "Advisory Agreement"). *See* Regan Decl. Ex. B. Pursuant to the Advisory Agreement, Eastwood discussed Harpel's claim with Bernstein Shur (who now represents Harpel in this action), provided Bernstein Shur with material related to the transaction, and got Bernstein Shur to "express[] confidence in the likelihood of Harpel winning a judgment against Nicholson." *See* Advisory Agreement, ¶ 2. Eastwood agreed to serve as an advisor to Harpel and Bernstein Shur prior to and throughout the court action, provide "all documentation and information in its possession that may be beneficial in Bernstein's efforts to secure a judgment against Nicholson," and "continue in its attempt to add to this claim an additional limited partner with a similar claim against Nicholson." Advisory Agreement, ¶ 4. In exchange, Harpel agreed to retain Bernstein Shur, file suit against Nicholson, and give Eastwood 20% of the net proceeds and 40% of any Additional Proceeds (from punitive damages)." Advisory Agreement ¶¶ 1, 3, 6.

Notably, the Eastwood/ISG production did not include any communications between Eastwood/ISG and Harpel or between Eastwood/ISG and Bernstein Shur. By letter dated May 23, 2013, counsel for the Estate wrote to counsel for Eastwood/ISG and specifically requested relevant communications and a privilege log that identified all documents withheld on the basis of privilege, and asked that each withheld document be identified by date, author, recipient, a brief description of the nature of the document, and the specific basis for withholding each such document. *See* Regan Decl. Ex. C.

After several follow-up requests, Eastwood/ISG finally produced a privilege log on July 10, 2013. *See* Regan Decl. Ex. D. The privilege log failed to provide the information necessary to adequately assess the privileges asserted, and notably, it also attempted to shield numerous documents on the basis of a purported "common-interest privilege." *See Id.* For example, Eastwood/ISG asserted the common-interest privilege as the only basis for withholding email correspondence between an employee of Eastwood and a Bernstein Shur attorney. [*See* Privilege Log Document Nos. 26, 28, 29, 30, 32, 35, 36.] On July 15, 2013, the Estate informed Eastwood/ISG that the privilege log was entirely deficient under the Subpoena and applicable law, and that the assertion of a "common-interest privilege" with respect to what appeared to be communications between Eastwood/ISG and Bernstein Shur was not appropriate. *See* Regan Decl. Ex. E. Eastwood/ISG responded by providing an amended privilege log ("Amended Log"), which by and large failed to cure the deficiencies of its initial log. *See* Regan Decl. Ex. F. The Amended Log still fails to identify the basis for asserting a privilege and still inappropriately asserts a common-interest privilege.

In response to the Amended Log, counsel for the Estate again sought to confer with Eastwood/ISG counsel in an attempt to try and resolve or narrow the discovery dispute and to

3

ensure compliance with Local Rule 37.1. *See* Regan Ex. G. On July 26, 2013, counsel for Eastwood/ISG made clear its position that its Amended Log was adequate and that it intended to stand behind its invocation of the "common-interest" privilege. *See Id.* Further, counsel for Eastwood/ISG has at no point made any effort to attempt to explain the basis for their privilege assertions in the Amended Log challenged by the Estate.

Because the Estate believes the discovery sought is essential to its defenses and Counterclaims and that Eastwood/ISG has not provided an adequate basis for withholding the documents requested by the Subpoena, the Estate now respectfully seeks an order from this Court requiring Eastwood/ISG to produce all of the documents listed in Eastwood/ISG's inadequate privilege log, or alternatively, the Estate respectfully requests all documents be submitted for in camera review, so that this Court may determine which documents are legitimately privileged.

## II. SUMMARY OF THE ARGUMENT

The party asserting a privilege as a basis for withholding otherwise responsive documents bears the burden of establishing the documents are being properly withheld. Eastwood/ISG has failed to meet that burden, providing a log that does not adequately describe the basis for the asserted privileges. Eastwood/ISG's Amended Log provides only cursory information regarding the nature of the communication and lacks any description or indication of why the communication might be privileged -- indeed in many instances the communication withheld does not even include an attorney on it, and in others Eastwood/ISG asserts a "common-interest" privilege that appears wholly inapplicable.

Without sufficient information, it is impossible to ascertain whether the documents identified in the privilege log are rightfully withheld, and in providing an incomplete Amended Log, Eastwood/ISG should be deemed to have waived any potentially applicable privilege.

Moreover, Eastwood/ISG asserts the common-interest privilege as a basis for not producing certain communications made between anyone acting on behalf of Eastwood/ISG and Bernstein Shur, counsel for Harpel. Eastwood/ISG's invocation of the common-interest privilege is woefully misguided and illustrates a fundamental misunderstanding of the privilege. Eastwood/ISG is not, together with Harpel, a codefendant in the pending litigation, nor does Eastwood/ISG share any common *legal* interest with Harpel. As evidenced by the parties' Advisory Agreement, Eastwood/ISG's interest in the Harpel litigation is purely commercial. Therefore, the common-interest privilege is not applicable, and Eastwood/ISG should not be able to rely on it as a basis for withholding any communications sought by the Subpoena.

### III. ARGUMENT

#### a. Legal Standard

Rule 45 sets forth the duties of a subpoena recipient and authorizes the court in the jurisdiction where the subpoena was issued to enforce the subpoena or hold the recipient in contempt. *See* Fed. R. Civ. P. 45(e). Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are governed by the same standards as Rule 26. *See* Fed. R. Civ. P. 45 advisory committee's note ("subpoena for documents . . . [has] the same scope as provided in Rule 26(b), thus promoting uniformity."). Under Rule 26(b)(1), a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Indeed, it is well recognized that "'[b]road discovery is a cornerstone of the litigation process contemplated by the Federal Rules of Civil Procedure.'" *W.E. Aubuchon Co. v. Benefirst, LLC*,

245 F.R.D. 38, 41 (D. Mass. 2007) (quoting *Zubulake v. UBS Warburg,* 217 F.R.D. 309, 311 (2003)).

If a party believes that information sought is protected by an applicable privilege, the party invoking the privilege "bears the burden of establishing that it applies to the communications at issue and that it has not been waived." *See In re Keeper of the Records*, 348 F.3d 16, 22 (1st Cir. 2003); *In re Grand Jury Subpoena*, 662 F.3d 65, 71 (1st Cir. 2011). The party asserting privilege must give written notice "sufficiently detailed so as to enable the receiving party and the court to understand the basis for the claim and to determine whether waiver has occurred." *See* Fed. R. Civ. P. 26 advisory committee's note 2006. Further, under the District of Massachusetts Local Rules, when a claim of privilege is asserted and any document is not provided on the basis of that assertion, "the attorney asserting the privilege shall identify in the objection the nature of the privilege that is being claimed with respect to each such document." D. Mass. Local Rule 34.1.

Although the federal rules do not specifically address the subject, "the 'universally accepted means' of claiming that requested documents are privileged is the production of a privilege log." *Gail v. New Eng. Gas Co.*, 243 F.R.D. 28, 33 (D. R.I. 2007); *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1 (D. D.C. 1999). To be considered adequate, a privilege log should at the very least identify each document and the individuals who are parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. *See* Fed. R. Civ. P. 26(b)(5)(A) ; *Gail*, 243 F.R.D. at 33 (citing *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). Importantly, "[a] failure by the party claiming privilege to adequately describe the documents at issue [or] to sufficiently explain the basis for the privilege . . . may be grounds for rejecting the

claim." *Id*.; *see Dorf & Stanton Communs. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (holding that Dorf & Stanton waived its claim to privilege by failing to provide a "complete privilege log demonstrating sufficient grounds for taking the privilege.").

    **b.    Eastwood/ISG's Amended Privilege Log is Deficient**

In its Amended Log, Eastwood/ISG identifies thirty-seven requested documents that it refuses to produce on the basis of attorney-client privilege, work product, and/or common-interest privilege. *See* Regan Decl. Ex. F. However, the Amended Log is deficient because it fails to adequately explain why these documents are entitled to protection based on any asserted privilege. *See id*. (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994)) ("The privilege log must include 'a detailed description of the documents to be protected with precise reasons given for the particular objection to discovery.'"); *In re Rock & Republic Enterprises, Inc.*, No. 10-11728, 2010 WL 4137572 at *6 (Bankr. S.D.N.Y. 2010) ("R&R is not required to reveal the details of any privileged communications at issue, but that does not excuse its failure to explain. . .the basis for applying the privilege. R&R cannot meet its burden by simply asserting a blanket claim of privilege with no evidentiary support."). Here, nowhere in the Amended Log does Eastwood/ISG come remotely close to explaining its basis for applying an asserted privilege.[1]

As a representative example, Eastwood/ISG identifies Document 15 as: "10/26/11 email from author Michael Morey [of Eastwood] to Attorney Paul McDonald of Bernstein Shur regarding LTA (12:46PM)." Eastwood/ISG claims attorney-client privilege and work product protection for the document. As Bernstein Shur is representing Harpel, not Eastwood/ISG in

---

[1] In addition to Federal Rules of Civil Procedure, the District of Massachusetts Local Rules, and applicable case law, the Subpoena also is clear that, for any document withheld on the basis of a privilege, Eastwood/ISG must set forth "either the title the document bears or the specific subject matter of the document, and a short description of the document sufficient to determine the validity of the assertion of privilege." See Subpoena, Definitions and Instructions, Paragraph 14.

7

connection with this action, it is entirely unclear on what basis Eastwood/ISG is claiming an attorney-client or work product privilege, as the privilege protects communications between an attorney and his or her *client*. *See Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (explaining the formulation of the attorney-client privilege followed by the First Circuit). Yet, Eastwood/ISG claims numerous times in the Amended Log that this type of communication is covered by the attorney-client privilege and thus protected from disclosure. [*See* Amended Log Document Nos. 1, 2, 4, 6, 8, 11, 13, 14, etc]. Moreover, several of the documents purportedly covered by the attorney/client or work product privilege do not appear to include an attorney on the communication. [See Amended Log Documents Nos. 3, 7, 9, 12, 21, 22, 27].

Based on the limited factual information provided by Eastwood/ISG, it is impossible to decipher any purported reason for not producing the documents listed. The purpose of a privilege log is to present a party whose discovery is constrained by a claim of privilege or work product protection with information sufficient to evaluate such a claim and to resist if it seems unjustified. *Gail*, 243 F.R.D. at 33 (citing Fed. R. Civ. P. 45 advisory committee's notes (1991)); *Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's London*, 2004 Mass. Super. LEXIS 182 at *7 (Mass. Sup. Ct. 2004) ("the primary purpose of providing a privilege log is to give the party challenging the privilege sufficient information to determine if assertion of the privilege was valid.). Here, there is absolutely no indication in the Amended Log of why the communications might be covered by any applicable privilege. Without such information, it is impossible to determine if Eastwood/ISG's assertion of the privilege is valid.

The party claiming privilege bears the burden of establishing that the privilege applies to the communication at issue, and a failure by the party claiming privilege to sufficiently explain the basis for the privilege is grounds for rejecting the claim. *Gail*, 243 F.R.D. at 33.

8

Eastwood/ISG has failed to satisfy its burden – effectively waiving its claim of privilege – and thus the Court should compel production of all documents where an adequate explanation of the asserted privilege is lacking. In the alternative, in camera review of the documents listed in the Amended Log to determine whether they are indeed privileged is appropriate. *See In re Grand Jury Subpoena*, 662 F.3d at 70 ("the very purpose of conducting an in camera review is to determine which, if any, of a group of documents are privileged. Given this prudential purpose, in camera reviews should be encouraged, not discouraged. In that spirit, federal courts commonly — and appropriately — conduct such reviews to determine whether particular documents are or are not privileged.").

    c.    **Eastwood/ISG Cannot Assert the Common-Interest Privilege**

For fifteen documents listed on the Amended Log, Eastwood/ISG asserts the common-interest privilege, either alone or in conjunction with the attorney client privilege. *See* Regan Decl. Ex. F. Typically, the common-interest privilege relates to matters of joint defense. *See Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002). For the common interest privilege to apply, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived. *Id.* Eastwood/ISG is not mounting any type of joint defense in collaboration with Harpel. Moreover, the purpose of the common-interest privilege is to allow "attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." *See id.*

Significantly, the common interest doctrine prevents waiving the attorney-client privilege only "when attorney-client communications are shared with a third person who has a *common*

9

*legal interest* with respect to these communications, for instance, a codefendant." *Cavallaro*, 284 F.3d at 250 (emphasis added). Eastwood/ISG is not a codefendant in the pending litigation, and Eastwood/ISG's interest in the litigation is purely commercial, rendering the common-interest doctrine inapplicable. *See Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y 1996) ("The parties claiming protection under the [common-interest] doctrine must show that they had a common legal, as opposed to commercial, interest."). Eastwood/ISG and Harpel entered into an Advisory Agreement whereby Eastwood would provide documentation and information beneficial to securing a judgment against Nicholson. In exchange, Harpel agreed to pay Eastwood 20% of the Net proceeds and 40% of any Additional Proceeds. This agreement signifies a commercial – not legal – relationship. Accordingly, Eastwood/ISG and Harpel do not share the required common legal interest, and thus the common-interest doctrine is unavailable to Eastwood/ISG.

The documents Eastwood/ISG seeks to withhold are plainly relevant, not just to the Counterclaims, but to fully understanding the nature of Eastwood/ISG's role in supporting this litigation. *See Conlon v. Rosa*, 295907, 2004 WL 1627337 (Mass. Land Ct. July 21, 2004) ("hidden funding can introduce a dynamic into a plaintiff's case-an agenda unrelated to its merits, a resistance to compromise-that otherwise might not be present and, unless known, cannot be managed or evaluated."). Eastwood/ISG's role is precisely the type of role court's are rightfully reluctant to shroud in privilege. *See Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373 (D. Del. 2010) (holding that the common-interest privilege did not exist between patantee and litigation financing companies). Indeed, the common-interest privilege should not be used to shield what are ultimately communications between Harpel and Eastwood/ISG – that would plainly not be privileged – simply because those communications are funneled through counsel.

10

Accordingly, Eastwood/ISG cannot rely on the common-interest privilege as a basis for withholding documents and must produce all communications between anyone acting on behalf of ISG or Eastwood and Bernstein Shur.

## IV. CONCLUSION

For the foregoing reasons, Nicholson respectfully requests that the Court enter an order requiring Eastwood/ISG to fully comply with the Subpoena by producing all requested documents within seven days of the Court's entry of an order.

Date: August 2, 2013

> Respectfully submitted,
> Defendant,
> Ronald A. Nicholson,
> by his attorneys,
>
> */s/ James Regan*
> Daniel G. Gurfein (admitted *pro hac vice*)
> James Regan (admitted *pro hac vice*)
> SATTERLEE STEPHENS BURKE & BURKE LLP
> 230 Park Avenue, Suite 1190
> New York, NY 10169
> Tel: (212) 818-9200
>
> */s/ Matthew J. Walko*
> Matthew J. Walko (BBO No. 562172)
> mjwalko@smithduggan.com
> SMITH DUGGAN BUELL & RUFO LLP
> Three Center Plaza, Suite 800
> Boston, Massachusetts 02108-2011
> Tel: 617-228-4400
> Fax: 617-248-9320