UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10280-RWZ


JAMES W. HARPEL

v.

JAMES A. NICHOLSON and JUSTIN M. NICHOLSON,
as Executors of the Estate of Ronald A. Nicholson


ORDER

October 1, 2013


ZOBEL, D.J.

      This action arises out of transactions and contracts relating to a Massachusetts

partnership called Litchfield Terrace Associates ("LTA").  Familiarity with the

background of the case, as laid out in my prior opinion, Harpel v. Nicholson, Civil

Action No. 12-10280-RWZ, 2012 WL 4965335 (D. Mass. Oct. 12, 2012), is assumed.

Before the court now is a motion by defendants James A. Nicholson and Justin M.

Nicholson, as Executors for the Estate of Ronald A. Nicholson ("Nicholson"), to compel

non-parties Eastwood Investors, LLC ("Eastwood") and The Investor Service Group,

LLC ("ISG") (collectively, "Eastwood/ISG")[1] to produce certain e-mail communications

between Eastwood/ISG and plaintiff James W. Harpel ("Harpel") or between

Eastwood/ISG and Bernstein Shur Sawyer & Nelson, P.A. ("Bernstein"), the law firm

representing Harpel in this matter.  Eastwood/ISG produced some documents in

---

[1] ISG is an affiliate of Eastwood.

response to a subpoena from defendants, but withheld others on the basis of attorney-client privilege, work product protection, and a "common interest privilege." Defendants claim that Eastwood/ISG's privilege log is deficient and that the assertion of a common interest privilege is inappropriate. They are correct on both counts.

"The party asserting the attorney-client or work product privilege bears the burden of showing that the privilege applies." Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012) (citing Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 870 N.E.2d 1105, 1114 (Mass. 2007)). In this diversity action, state law governs the scope and application of the asserted privileges. F.D.I.C. v. Ogden Corp., 202 F.3d 454, 460 (1st Cir. 2000); Fed. R. Evid. 501.[2]

Under Fed. R. Civ. P. 26(b)(5), when a party withholds otherwise discoverable information by invoking privilege or work product, it must "describe the nature of documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Defendants contend, and I agree, that the Eastwood/ISG's privilege log fails to adequately explain why the listed documents are entitled to protection under the asserted privileges. Although the log contains general

---

[2] Massachusetts endorses the "classic formulation of the attorney-client privilege . . . found in 8 J. Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961): '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.'" Commissioner of Revenue v. Comcast Corp., 901 N.E.2d 1185 (Mass. 2009). Work product is protected under Mass. R. Civ. P. 26(b)(3), which shields discovery of documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" absent a showing of substantial need and undue hardship.

information about the sender, recipient, and subject of each communication, it lacks the detail necessary to establish grounds for privilege.  Nearly all the documents listed are described vaguely as "regarding LTA," without any elaboration or indication that they pertain to legal advice or reflect preparation for litigation.  <u>See</u> Docket # 41, Ex. 6. Several communications labeled as attorney-client privilege do not appear to include attorneys or are emails between various Eastwood employees, whose positions within the company are unexplained, and counsel for Harpel.  Also included on the log are emails between counsel for Eastwood and counsel for Harpel, and even an email between Harpel and his counsel – none of which, at least at first blush, appear to be covered by Eastwood/ISG's privileges.  It is simply impossible to "assess [Eastwood/ISG's] claim" of privilege and work-product protection from the limited information contained in the log.

As for the common interest doctrine, I decline to find that it applies here.  "The common interest doctrine does not create a new or separate privilege, but prevents waiver of the attorney-client privilege when otherwise privileged communications are disclosed to and shared, in confidence, with an attorney for a third person having a common legal interest for the purpose of rendering legal advice to the client."  <u>Hanover Ins. Co. v. Rapo and Jepsen Ins. Services, Inc.</u>, 870 N.E.2d 1105, 1110 (Mass. 2007).[3] An "essential ingredient" of the doctrine is the "common pursuit of a common legal enterprise"; "the parties among whom the privileged matter is shared must have a

---

[3] The common interest doctrine has also been applied to protect shared work product.  <u>See Hanover Ins. Co.</u>, 870 N.E.2d at 1110, 1112 (citing <u>in re Grand Jury Subpoena</u>, 274 F.3d 563, 574-75 (1st Cir. 2001)).

3

common legal, as opposed to commercial, interest." <u>Am. Auto Ins. Co. v. J.P. Noonan Transp.</u>, 12 Mass L. Rptr. 493, 496 (Mass. Super. Ct. 2001) (quoting <u>Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.</u>, 160 F.R.D. 437, 446 (S.D.N.Y. 1995)).

Eastwood/ISG withheld fifteen emails between its counsel or employees and Harpel's counsel under an alleged common interest privilege.[4]  Eastwood/ISG contends that it shares a common legal interest with Harpel, as reflected in an "Advisory Agreement" whereby Harpel agreed to file suit against Nicholson, with Bernstein as his counsel, and Eastwood/ISG pledged to "serve as an advisor to both Harpel and Bernstein prior to and throughout the court action" in exchange for a percentage of the recovered damages.  Docket # 41, Ex. B.

While Eastwood/ISG is correct that the common interest doctrine is not limited solely to co-defendants or parties to an action, <u>see</u> <u>Hanover Ins. Co.</u>, 870 N.E.2d at 1110, it is mistaken in invoking the doctrine here.  The common enterprise between Eastwood/ISG and Harpel was of a business, not legal, nature.  To be sure, the advisory agreement anticipates litigation, but Eastwood/ISG's involvement in the matter was not in furtherance or protection of its own legal interests, but rather to assist Harpel and Bernstein in hopes of profiting from Harpel's potential recovery.  This was, in essence, a commercial arrangement.  That Eastwood/ISG obviously shared Harpel's desire to prevail against Nicholson, and stood to benefit financially therefrom, does not amount to the existence of a common legal interest.  <u>See, e.g.</u>, <u>Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.</u>, 215 F.R.D. 466, 473 (S.D.N.Y. 2003) (nonparty's desire for

[4] One of the emails is between Harpel and his counsel.

4

party to reach a favorable outcome in litigation with opponent was insufficient to invoke the common interest rule) (citing cases); Id. ("A concern to ensure the payment of money is commercial in nature and does not qualify for protection under the common interest rule."); Verigy US, Inc. v. Mayder, No. C07-04330RMW (HRL), 2008 WL 5063873, at *3 (N.D. Cal. Nov. 21, 2008) ("a shared desire to see a party succeed in an action is insufficient to invoke the 'common interest' doctrine"); Marciano v. Atlantic Medical Specialties, Inc., No. 08-CV-305-JTC, 2011 WL 294487, at * 4 (W.D.N.Y. Jan. 27. 2011) (privilege was waived by disclosure to outside party who had personal knowledge of the events and provided assistance in the litigation, but shared only a common business, not legal, interest with defendants).  Accordingly, the documents at issue are not covered by a common interest privilege.[5]

Defendants' motion to compel (Docket # 39) is ALLOWED.  Eastwood/IGS shall provide an amended privilege log in compliance with this opinion and shall produce any documents withheld solely on the basis of a "common interest" privilege.

|     October 1, 2013     | |
|---|---|
| DATE | |

|     /s/Rya W. Zobel     |
|---|
| RYA W. ZOBEL |
| UNITED STATES DISTRICT JUDGE |

---

[5] Eastwood/ISG and Harpel also claim that they have a common legal interest in defending against the defendants' counterclaim against Harpel, which includes some allegations of unsavory conduct by ISG.  To the extent such allegations created a common legal interest for Eastwood/ISG and Harpel, that interest does not retroactively make privileged the communications currently at issue, which occurred well before the filing of the counterclaim.